No. 19-2751

*In the*

# United States Court of Appeals

*for the*

# Eighth Circuit

---

### DEREK FRANCIS LUEBBERT,

**Plaintiff-Appellant,**

**vs.**

### GLOBAL CONTROL SYSTEMS, INC.,

**Defendant-Appellee**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CASE NO. 18-0945-CV-W-BP

---

## ADDENDUM TO APPELLANT'S PRINCIPAL BRIEF

---

**Neil S. Sader, MO #34375**
**Michael J. Wambolt, Mo #51231**
**THE SADER LAW FIRM**
**2345 Grand, Suite 2150**
**Kansas City, MO 64108**
**Telephone (816) 595-1801**
**Facsimile (816) 561-0818**
nsader@saderlawfirm.com
mwambolt@saderlawfirm.com

**ATTORNEYS FOR APPELLANT**

# INDEX TO ADDENDUM

Certified District Court Order
Affirming Bankruptcy Court's Memorandum
Opinion..................................................................................Add. 1-12

Jury Verdict Form .................................................................Add. 13-14

Amended District Court Judgment .........................................Add. 15

Settlement Agreement...........................................................Add. 16-23

Amendment to Settlement Agreement....................................Add. 24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

IN RE: )
      )    Case No. 16-42612-can7
DEREK FRANCIS LUEBBERT, )    Chapter 7
      )
    Debtor. )    Adversary Case No. 16-04165
      )
_____ )
GLOBAL CONTROL SYSTEMS, INC., )
      )
    Plaintiff, )
      )
v. )    Case No. 18-0945-CV-W-BP
      )
DEREK FRANCIS LUEBBERT, )
      )
    Defendant. )

Derek Francis Luebbert ("Luebbert") filed a Notice of Appeal, appealing the Bankruptcy Court's[1] Order and Judgment of Nondischargeability regarding a debt he owed to his former employer, Global Control Systems, Inc., ("GCS"). The Court concludes that the Bankruptcy Court's factual findings are not clearly erroneous and there is no legal error; accordingly, the Bankruptcy Court's decision is affirmed.

## I. BACKGROUND

GCS is in the business of writing software that controls manufacturing equipment. Luebbert, an engineer, began working for GCS in August 2006. At the time of his employment he signed an Employment Agreement that, among other things, contained a three-year covenant not to compete with GCS within 100 miles, prohibited Luebbert from soliciting business from GCS's customers, and included nondisclosure and confidentiality provisions.

---

[1] The Honorable Cynthia A. Norton, Chief Bankruptcy Judge for this District.

Luebbert's principal (if not exclusive) responsibilities related to one of GCS's customers, Alliant Techsystems Inc., ("ATK"). ATK had contracted with the United States Department of Defense to design ammunition that would have less environmental impact, and ATK had contracted with GCS for software involved in the process. Luebbert's responsibility was to cultivate the relationship between GCS and ATK and provide support for the project.

In December 2009, Luebbert – while still employed by GCS – formed Atlas Industrial Solutions, LLC, ("Atlas"). He testified that one of its purposes was to be a vehicle whereby he could bid on ATK's projects. (Appellant's App. pp. 431-32).[2] A few months later, Atlas bid on a $90,000 project for ATK, which has been referred to by the parties as "PO D95."[3] ATK accepted Atlas's bid in May 2010, and Luebbert immediately resigned his position at GCS. Luebbert had not previously advised GCS about PO D95 or the fact that he (through Atlas) had bid on it. And, while it is not clear that he revealed this information when he resigned, he said enough to cause GCS to suspect that Luebbert had violated the Employment Agreement (by soliciting business from ATK) and that he was going to continue violating the Employment Agreement (by failing to honor the covenant not to compete).

GCS retained counsel and threatened legal action; Luebbert also retained counsel. At this point, GCS believed it had few good options. It wanted to maintain good relations with ATK but feared that ATK would be unhappy if GCS insisted on strictly enforcing the covenant not to compete, thereby depriving ATK of Luebbert's services. GCS also did not want to simply surrender its rights under the covenant not to compete or its business expectations from a relationship with ATK. Accordingly, in June 2010 GCS and Luebbert agreed to a Settlement

---

[2] "Appellant's App. p. __" is a reference to Appellant's Appendix.

[3] This is a shorthand reference for Purchase Order D37395.

Agreement.[4] The Settlement Agreement temporarily suspended the covenant not to compete and permitted Luebbert to continue working for ATK on PO D95. It further provided that 70% of the proceeds would be paid to GCS and 30% to Luebbert.[5] While not specified in the Settlement Agreement, the parties handled the payments by having ATK issue a check payable to GCS and Luebbert jointly; Luebbert endorsed the checks and sent them to GCS, who endorsed them and returned Luebbert's portion of the payment. Finally, because work on PO D95 was not anticipated to take long, the Settlement Agreement provided that the suspension of the covenant not to compete would last until the work was done, GCS was paid the full amount it was due, or six months, whichever was earlier. At that point, the three-year period on the covenant not to compete would commence.

On at least one occasion, ATK contacted Luebbert about expanding the scope of work covered by PO D95. Luebbert contacted GCS to confirm his understanding that ATK needed to contact GCS directly on such matters, and GCS agreed with Luebbert's understanding.

In November 2010 it became apparent that the work on PO D95 would not be completed within six months for a variety of reasons, including the fact that ATK wished (as mentioned above) to expand the project. Accordingly, in January 2011, GCS and Luebbert agreed to an Amendment to the Settlement Agreement. The Amendment continued the suspension of the covenant not to compete, changed the apportionment of the money paid by ATK to 50/50, and codified the parties' practice of having ATK issue joint checks to GCS and Luebbert. The

---

[4] Both Luebbert and Atlas were parties to the Settlement Agreement. For ease of discussion, the Court will refer to them collectively as "Luebbert."

[5] This aspect of the Settlement Agreement included a requirement that Luebbert give GCS a promissory note for $66,000 which he was to pay off with the proceeds from PO D95, but this detail is not important to the present discussion.

Amendment also required Luebbert "to keep GCS informed regarding purchase orders, additional work requests, invoices or any other accounting related activities." (Appellant's App. p. 229).

In mid-November 2012, ATK issued new purchase orders to Luebbert; Luebbert did not advise GCS of these purchase orders and did not share the proceeds with GCS. Instead, he asked GCS to amend the agreement to provide him with a larger share of the proceeds from ATK projects, but GCS refused to do so. Luebbert then contacted an attorney and expressed concerns about a potential conflict of interest as well as the unfairness of the Settlement Agreement and the Amendment. According to Luebbert, his role at ATK was changing to permit him to contract with other entities to perform work for ATK, and he perceived a conflict in that he could not refer work to, or contract with, GCS while also sharing in the proceeds paid to GCS. The attorney advised that he believed the Settlement Agreement and Amendment applied only to work done on PO D95 and that Luebbert had no obligation to split any other fees with GCS. He also opined that the non-compete clause was unenforceable. He advised Luebbert to contact GCS and explain the situation, and in the meantime continue complying with the agreements.

In February 2013, Atlas issued two invoices to ATK that related to PO D95. A few days later, Luebbert sent copies of the invoices to GCS, but did not (as his attorney suggested) indicate that continued work for ATK was creating a conflict of interest, that he believed that work on PO D95 was nearing completion, or that he believed that he was performing work that was not covered by the parties' agreement. Instead, he indicated that he anticipated more work from ATK, which would provide additional opportunities for GCS. Later that week, Luebbert sent another email to GCS outlining the potential conflict of interest and suggesting that one solution was for him to simply continue doing the work himself (instead of arranging for ATK to formally contract with

GCS). GCS agreed that Luebbert had described a "huge conflict of interest" and indicated its preference that Luebbert continue doing the work himself.

Meanwhile, Luebbert had begun efforts to have ATK issue checks to Atlas instead of issuing joint checks. At first, ATK continued referencing GCS in the memo line, but Luebbert arranged for those checks to be reissued to omit any reference to GCS. Once these arrangements were in place, on April 5, 2013, Luebbert emailed GCS and advised that he no longer intended to honor the Settlement Agreement or the Amendment because the working relationship was "not sustainable" and because he believed that he had fulfilled all his obligations. (Appellant's App. p. 630.) He also, despite this statement and despite his concerns about a conflict of interest, proposed amending the agreement to provide him with 90% of the profits from any agreements with ATK. He also did not reveal that he had arranged for ATK to stop issuing two-party checks and was keeping 100% of the proceeds for himself.

Thereafter, Luebbert continued receiving checks from ATK without splitting the proceeds with GCS. In some instances, he arranged for ATK to issue the checks to a friend's company (Midwest Controls), which then remitted the funds to Luebbert. Meanwhile, GCS suspected (based on Luebbert's April 5 email) that Luebbert was not honoring the agreement any longer. In June 2013, GCS filed suit against Luebbert in Jackson County Circuit Court, and the case was removed to federal court. The case, captioned *Global Control Systems, Inc. v. Luebbert,* went to trial in late March, 2016.[6] The jury was asked to consider breach of contract claims against both Luebbert and Atlas; the jury returned verdicts for GCS on both claims and found Luebbert liable for $302,631.31 in damages and found Atlas liable for $1.00 in damages. In August 2016 the court amended the judgment to include prejudgment interest, postjudgment interest, and attorney fees.

---

[6] The Case Number is 14-0657-CV-W-DGK.

Luebbert filed for Chapter 7 relief in September 2016. GCS filed an adversary complaint seeking to except its judgment from discharge, arguing that Luebbert's debt arose from a willful and malicious injury as described in 11 U.S.C. § 523(a)(6).[7] The Bankruptcy Court conducted a trial, at the conclusion of which it concluded that Luebbert's debt to GCS resulted from a willful and malicious injury, and therefore declined to discharge that debt. This appeal followed.[8]

## II. DISCUSSSION[9]

### A. Standards

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error." *Pension Benefit Guaranty Corp. v. Falcon Products, Inc., (In re Falcon Prod., Inc.),* 497 F.3d 838, 840-41 (8th Cir. 2007) (quotation omitted). "'The bankruptcy court's determination of whether a party acted willfully and maliciously inherently involves inquiry into and finding of intent, which is a question of fact.'" *In re Kantos for Cash Flow Mgmt., Inc.,* 579 B.R. 846, 850 (B.A.P. 8th Cir. 2018) (quoting *Waugh v. Eldridge (In re Waugh),* 95 F.3d 706, 710 (8th Cir.1996) (citation omitted)); *see also First National Bank of Fayetteville v. Phillips (In re Phillips),* 882 F.2d 302, 305 (8th Cir. 1989). "A finding is clearly erroneous if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has

---

[7] GCS also asserted an exception due to fraud pursuant to 11 U.S.C. § 523(a)(2)(A), but later abandoned this theory.

[8] The Court originally raised a question about its jurisdiction, believing that Luebbert did not timely elect to have this appeal decided by the District Court (as opposed to the Bankruptcy Appellate Panel). (Doc. 6.) Without resolving that issue, the Court is persuaded that it has jurisdiction because GCS subsequently made a timely election to have the appeal decided by the District Court. (Doc. 7; 11 U.S.C. § 158(c)(1)(B) (any party other than appellant has thirty days from the filing of the Notice of Appeal to make the election).)

[9] GCS asks the Court to summarily affirm the Bankruptcy Court because Luebbert failed to provide an adequate record to permit meaningful review of the Bankruptcy Court's decision. (Doc. 18, pp. 40-45.) This request is denied because the Court believes that Luebbert has provided appropriate portions of the Record for the Court to consider. This case is unlike those in which the Record on Appeal included only the Bankruptcy Court's decision and did not include the trial transcript. *E.g., Situm v. Coppess (In re Coppess),* 567 B.R. 543, 545 (B.A.P. 8th Cir. 2017); *Rose v. Rose (In re Rose),* 483 B.R. 540, 544 (B.A.P. 8th Cir. 2012).

Appellate Case: 19-2751     Page: 8     Date Filed: 10/18/2019 Entry ID: 4843463

been committed." *Hernandez v. General Mills Fed. Credit Union (In re Hernandez),* 860 F.3d 591, 602 (8th Cir. 2017) (quotations omitted). The Bankruptcy Court's credibility determinations are "virtually unreviewable." *Id.*

A bankruptcy discharge does not discharge any debt incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The requirements that the injury be "willful" and "malicious" are distinct. *E.g., Fischer v. Scarborough (In re Scarborough),* 171 F.3d 638, 641 (8th Cir. 1999); *Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 880-81 (8th Cir. 1985) ("Congress tells us in § 523(a)(6) that malice and willfulness are two different characteristics. They should not be lumped together to create an amorphous standard to prevent discharge for any conduct that may be judicially considered to be deplorable.").

"The word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998) (emphasis in original). Put another way, the debtor must intend the consequences of his act. *Id.* at 62; *see also Roussel v. Clear Sky Properties, LLC,* 829 F.3d 1043, 1048 (8th Cir. 2016). However, "[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences." *Blocker v. Patch (In re Patch),* 526 F.3d 1176, 1180 (8th Cir. 2008). "Maliciousness is conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to cause financial harm" to the creditor. *Roussel,* 829 F.3d at 1047 (quotation omitted). "Malicious for purposes of § 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act. A wrongful act is malicious if there exists a knowing wrongfulness or knowing disregard of

Appellate Case: 19-2751     Page: 9     Date Filed: 10/18/2019 Entry ID: 4843463

the rights of another." *Bank of Iberia v. Jeffries (In re Jeffries),* 378 B.R. 248, 255-56 (Bankr. W.D. Mo. 2007) (cleaned up).

## B. Whether Luebbert Injured GCS

The Bankruptcy Court began its legal discussion by determining whether Luebbert injured GCS. This discussion was prompted by Luebbert's testimony (and his attorney's apparent suggestions) that GCS had not been injured. (*E.g.,* Appellant's App. pp. 491, 583-84, 610.) Relying on collateral estoppel, the Bankruptcy Court determined that the jury's verdict and resulting judgment on GCS's breach of contract claim foreclosed any argument that Luebbert had not injured GCS. Luebbert argues that the Bankruptcy Court committed legal error in applying collateral estoppel. In his initial Brief, Luebbert contends that this analysis was erroneous because the Bankruptcy Court did not explain how collateral estoppel applied to the facts of this case. (Doc. 11, p. 16.)[10] At the same time, Luebbert does not explain why he was *not* collaterally estopped from alleging that his actions caused GCS to suffer financial injury. His argument is refined in his Reply Brief; there, he argues that collateral estoppel does not apply because the jury in the civil suit was not asked to determine if he acted willfully or maliciously. (Doc. 21, pp. 9-10.)[11]

The Court concludes that the Bankruptcy Court's application of collateral estoppel was legally correct. "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell,* 553 U.S. 880, 891 n.4 (2008). Under Missouri law, "[c]ollateral estoppel, or issue preclusion, bars relitigation of an issue

---

[10] "Doc. ___" is a reference to a document filed in the appeal, and the page numbers are those generated by the Court's CM/ECF system (which may not correspond to the document's original pagination).

[11] Luebbert also argues that the Bankruptcy Court's reference to the *Rooker/Feldman* doctrine was erroneous because the breach of contract claim was litigated in federal court and not state court. While Luebbert is correct, this does not affect the analysis set forth above.

Appellate Case: 19-2751     Page: 10     Date Filed: 10/18/2019 Entry ID: 4843463

already decided in a different cause of action." *Ideker v. PPG Indus., Inc.,* 788 F.3d 849, 852 (8th Cir. 2015) (quotations omitted). Missouri courts apply four factors to determine whether collateral estoppel applies:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Id.* at 853 (quotations omitted).

There can be little doubt that Luebbert is collaterally estopped from arguing that he did not cause damage or injury to GCS. In rendering judgment on the breach of contract claim, the jury necessarily determined that Luebbert's breach of the Settlement Agreement and the Amendment damaged/injured GCS. While the jury was not asked to determine whether Luebbert acted willfully or maliciously, the Bankruptcy Court explicitly stated that it was not relying on the judgment for these matters; it relied on the judgment only to determine that Luebbert injured GCS. This decision was legally correct.

### C. Whether Luebbert Acted Willfully and Maliciously

As a general matter, Luebbert's remaining arguments constitute disagreements with the Bankruptcy Court's decisions regarding the weight to be accorded particular items of evidence, the resolution of disputed facts, inferences to be drawn, and Luebbert's credibility. The Court's review of the Record fails to support a "definite and firm conviction that a mistake has been committed." *In re Hernandez,* 860 F.3d at 602.

Initially, Luebbert faults the Bankruptcy Court for not narrowly construing the evidence in his favor. (*E.g.,* Doc. 11, p. 17; Doc. 21, p. 11.) However, the rule to which Luebbert refers requires that the statutory exceptions to discharge be narrowly construed. *See Geiger v.*

9

*Kawaauhau (In re Geiger),* 113 F.3d 848, 853 (8th Cir. 1997) (en banc), *aff'd,* 523 U.S. 57 (1998) (describing the requirement of strict construction as a rule of statutory construction). The rule does not require all evidence on factual matters be construed in his favor, or that all factual disputes be resolved in his favor. Moreover, the Bankruptcy Court correctly stated that GCS bore the burden of proof and that GCS was required to prove the facts necessary to support the exception to discharge by the preponderance of the evidence, so there was no legal error. And, to the extent that Luebbert asks the Court to reweigh the evidence, the request must be rejected as contrary to the Court's obligations under the applicable standard of review.

Luebbert's principal argument is that he did not intend to injure GCS. For support, he primarily relies on (1) his own testimony and (2) the advice from his attorney, both to the effect that he believed he had fully performed his obligations under the Settlement Agreement and Amendment. However, there was evidence to the contrary, and the Bankruptcy Court was entitled to place greater weight on the contrary evidence, evaluate Luebbert's credibility, and find that he specifically intended to deprive GCS of its agreed-upon portions of payments from ATK and keep them for himself.[12] Some of the evidence cited by the Bankruptcy Court – and supported by the Record – includes:

- Luebbert did not follow his attorney's advice, thereby undercutting his claim that he was relying on that advice.

- Luebbert's April 5, 2013 email to GCS did not seek to terminate the relationship or contend that all work under the Settlement Agreement and Amendment had been completed;

---

[12] While Luebbert's liability to GCS arises from a breach of contract, this does not preclude a finding that he also willfully and maliciously injured GCS. *E.g., Williams v. IBEW Local 520 (In re Williams),* 337 F.3d 504, 510 (5th Cir. 2003); *Hearing Assocs., Inc. v. Gervais,* 579 B.R. 516, 525 (D. Minn. 2016). Similarly, the fact that Luebbert intended to enrich himself does not preclude a finding that he did so by willfully and maliciously injuring GCS.

instead, Luebbert demanded a renegotiation that would provide him with 90% of the proceeds – contradicting his stated belief that he had fulfilled all his obligations.

- Luebbert secretly arranged for ATK to stop issuing joint checks, and in doing so not only failed to relate his actions to GCS, but also misled ATK as to the reasons for doing so.

- Luebbert arranged for payments to be paid to Midwest Controls so they could be passed to him without being detected by GCS.

- Luebbert did not remit GCS's share of some checks that were inarguably related to PO D95.

- Luebbert did not advise GCS of ATK's new work requests (regardless of whether they related to PO D95) and instead worked on them and kept the profits.

- Luebbert knew that the Amendment applied to new work requests from ATK, as demonstrated by the facts that (1) on numerous occasions GCS indicated that such requests should be forwarded to GCS and (2) Luebbert had previously discussed such new work with GCS. Indeed, it was his desire to garner a larger share of those proceeds at GCS's expense that motivated Luebbert to breach the Settlement Agreement and Amendment.

Likening Luebbert's actions to a conversion of GCS's funds, the Bankruptcy Court found that this (and other) evidence demonstrated that Luebbert's testimony that he did not intend to harm GCS was "not credible," and that Luebbert knew that withholding money from GCS would harm GCS. Recognizing that the same facts may be relevant to determining both willfulness and maliciousness, the Bankruptcy Court also found that Luebbert intended to harm GCS by withholding its money. These factual determinations are supported by the Record and are not clearly erroneous. Certainly, the Bankruptcy Court (as the finder of fact) could have credited Luebbert's testimony and resolved the evidence in his favor – but it was not obligated to do so,

and the Court is not left with the definite and firm conviction that the Bankruptcy Court's determination was a mistake.

### III.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision denying Luebbert a discharge of his debt to GCS is **AFFIRMED**.

**IT IS SO ORDERED.**


/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE:  July 15, 2019                  UNITED STATES DISTRICT COURT


*ECF DOCUMENT*
I hereby attest and certify this is a printed copy of a
document which was electronically filed with the United States
District Court for the Western District of Missouri.

Date Filed: _7-15-19_ Paige A. Wymore-Wynn, Clerk

By:_____KKern_____, Deputy Clerk

**VERDICT FORM A**

**Note:** Complete the following paragraph by writing in the name required by your verdict:

On Plaintiff Global Control Systems, Inc.'s claim against Defendant Derek Luebbert for breach of contract (as submitted in Instruction Number 13), we, the undersigned jurors, unanimously find in favor of:

_____Global Control Systems, Inc._____

(Plaintiff Global Control Systems, Inc.    *or*    Defendant Derek Luebbert)

**Note:** Complete the following paragraph only if the above finding is in favor of Plaintiff:

We, the undersigned jurors, assess the damages of Plaintiff Global Control Systems, Inc., from Defendant Luebbert's breach or breaches of contract as follows:

$ _302,631$$^{31}$_____ (*stating the amount*).

_____          _____April 4, 2016
SIGNATURE OF JURY FOREPERSON                    DATE

EXHIBIT
43

## VERDICT FORM B

**Note:** Complete the following paragraph by writing in the name required by your verdict:

On Plaintiff Global Control Systems, Inc.'s claim against Defendant Atlas Industrial Solutions LLC for breach of contract (as submitted in Instruction Number 14), we, the undersigned jurors, unanimously find in favor of:

*Global Control Systems, Inc.*

| | | |
|---|---|---|
| (Plaintiff Global Control Systems, Inc. | *or* | Defendant Atlas Industrial Solutions LLC) |

**Note:** Complete the following paragraph only if the above finding is in favor of Plaintiff:

We, the undersigned jurors, assess the damages of Plaintiff Global Control Systems, Inc., from Defendant Atlas Industrial Solution LLC's breach or breaches of contract as follows:

$ 1 00 _____ (*stating the amount*).


_____
SIGNATURE OF JURY FOREPERSON

*April 4, 2016*
DATE

22

Add. 14

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-0657-CV-W-DGK |
| | ) | |
| DEREK LUEBBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED JUDGMENT IN A CIVIL ACTION

  **X**   **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

_____ **Decision by Court.**  This action has been considered and a decision has been rendered by the Court.

**IT IS ORDERED AND ADJUDGED** that

Judgment is entered in favor of Plaintiff and against Defendant Derek Luebbert in the amount of $302,631.30 and against Defendant Atlas Industrial Solutions, LLC, in the amount of $1.00. (Verdict, Doc. 220)

Defendants Derek Luebbert, Atlas Industrial Solutions and Midwest Control's motion for summary judgment is granted in part. (Order, Doc. 146)

Defendant Alliant Techsystems' motion for summary judgment is granted in part. (Order, Doc. 149)

Defendant Midwest Control's motion for summary judgment is granted. (Order, Doc. 173)

Plaintiff's motion to dismiss counterclaims is granted. (Order, Doc. 192)

Defendants Derek Luebbert and Atlas are jointly and severally liable to GCS for attorneys' fees in the amount of $305,802.89. (Doc. 237)

GCS is awarded $47,074.85 in pre-judgment interest pursuant to Mo. Rev. Stat. § 408.020 against Defendant Luebbert. (Doc. 237)

GCS is awarded post-judgment interest against Defendants Luebbert and Atlas from April 5, 2016, at the applicable rate under 28 U.S.C. § 1961. (Doc. 237)

|   August 3, 2016    |           Paige Wymore-Wynn           |
|---|---|
| Dated | Clerk of Court |

Add. 15

|   August 4, 2016    |        /s/ Alex Francis        |
|---|---|
| Entered | (by) Deputy Clerk |

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Settlement Agreement") is entered into between Derek Luebbert an individual residing at 909 Walnut, Apartment 1907, Kansas City, Missouri 64106 and ATLAS INDUSTRIAL SOLUTIONS, LLC, a Missouri Limited Liability Company (jointly and severally referred to as "MR. LUEBBERT") on the one hand, and GLOBAL CONTROL SYSTEMS, INC a Kansas Corporation, hereinafter referred to as "GCS" on the other hand (collectively, the "Parties") on the 17th day of June the year 2010.

WHEREAS, the Parties entered into an agreement dated August 15, 2006, entitled "EMPLOYMENT AGREEMENT" (the "Non-Compete Agreement"), which is attached as Exhibit "1" to this Settlement Agreement.

WHEREAS, MR. LUEBBERT resigned from the employment of GCS on May 27, 2010.

WHEREAS, MR. LUEBBERT erased certain data from property of GCS and GCS contends that MR. LUEBBERT retained GCS and GCS client data without permission or authorization of GCS;

WHEREAS, MR. LUEBBERT obtained a Purchase Order No. D37395 in the amount of $96,000 dated May 26, 2010 from Alliant Techsystems Inc., with $96,000 of work remaining, while employed by GCS (the "Purchase Order");

WHEREAS, MR. LUEBBERT obtained the Purchase Order from a client of GCS without permission of GCS while employed by GCS and intending to work under the Purchase Order after his resignation from GCS;

WHEREAS, GCS may have claims against MR. LUEBBERT based upon his actions;

WHEREAS, MR. LUEBBERT has made claims to certain employment related benefits of GCS.

WHEREAS, the Parties all deny that they have liability to any of the other Parties hereto. WHEREAS, the Parties have, between themselves, negotiated a resolution of any and all disputes, claims or potential claims arising between them and intend, by the terms of this Settlement Agreement, to memorialize the resolution of all disputes, claims or potential claims between the Parties arising as a result thereof; and



WHEREAS, MR. LUEBBERT's intent in entering into this agreement is to restore GCS to the approximately the same economic position with ATK it would have been in had the purchase order been issued to GCS and MR. LUEBBERT continued to work for GCS, to compensate GCS for claimed damages due to the circumstances surrounding MR. LUEBBERT's actions and allow MR. LUEBBERT to earn approximately what he was earning before his employment ceased .

-1-

Add. 16



EXHIBIT

36

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration. receipt of which is hereby acknowledged, the Parties agree as follows:

1. The above recitals are hereby made a part of this Settlement Agreement.

2. The Parties acknowledge that the employment of MR. LUEBBERT is hereby terminated. The parties further agree that the Non-Compete Agreement shall remain in full force and effect as further provided below.

3. MR. LUEBBERT agrees to pay to GCS, the sum of $66,000. in the manner and on the terms and subject to the conditions set forth below.

4. As further provided in paragraph 6 below, GCS hereby releases and fully discharges MR. LUEBBERT and ATLAS INDUSTRIAL SOLUTIONS, LLC, including their owners. parent corporation, attorneys, subsidiaries, agents, affiliates, and employees of any and all causes of action or claims, claims for damages, claims for compensation, debts, costs, contracts, and agreements, that it may have for any cause or damages, known or unknown.

5. Immediately upon the Parties' execution of this Settlement Agreement, MR. LUEBBERT shall deliver to counsel for GCS, INTELLECTUAL PROPERTY CENTER, LLC ("Counsel for GCS"), the following: (a) an executed copy of this agreement (b) an executed $66,000.00 secured promissory note in the form of the promissory note attached hereto as Exhibit "2" ("Note"); (c) an executed Security Agreement attached hereto as Exhibit "3" ("Security"); (d) an executed Affidavit of Destruction attached hereto as Exhibit "4" and (e) a complete copy of the Purchase Order, including the scope. All payments due under the Note are to be made payable to "Global Controls Systems, Inc." and are to be remitted via first class with confirmation receipt to:

Global Control Systems. Inc.
P.O. Box 419429
Kansas City. MO
64179-0528

or as otherwise agreed upon in writing.

6. The Parties acknowledge that they understand and agree that, until the full and final payment by MR. LUEBBERT required by the secured Note is paid, the aforesaid release of liability of MR. LUEBBERT and ATLAS INDUSTRIAL SOLUTIONS, LLC, remains conditional. The Parties further acknowledge that they understand and agree that the obligations of MR. LUEBBERT to make payments under the secured Note is contingent upon the aforesaid Purchase Order remaining in effect, MR. LUEBBERT and ATLAS INDUSTRIAL SOLUTIONS, LLC continued performance and ATK's continuing to make payment thereon. If the Purchase Order is canceled, MR. LUEBBERT or ATLAS INDUSTRIAL

-2-

Add. 17

SOLUTIONS, LLC fail to perform or if ATK ceases to make payments thereon, MR. LUEBBERT'S obligations under the Promissory Note shall be extinguished. MR. LUEBBERT shall have the option to pay to GCS the difference between the amount paid to date and the original **$66,000 indebtedness within 45 days and, if** he does so, the Release shall be effective. If GCS has grounds to and elects to accelerate payment under the Security Agreement and MR. LUEBBERT fails to pay the difference between the amount paid to date and the original $66,000 indebtedness, GCS may terminate this agreement and assert any right, claims or causes of action against MR. LUEBBERT, jointly or severally. **Unless MR. LUEBBERT pays the entire amount due under the secured Note, GCS reserves all rights, claims, causes of action(s) of any kind including any and all causes of action or claims, claims for damages, claims for compensation, debts, costs, contracts, and agreements, that it may have for any cause or damages, known or unknown against MR. LUEBBERT and/or ATLAS INDUSTRIAL SOLUTIONS, LLC it would have had if this Settlement Agreement and Mutual Release never existed.** In that event, MR. LUEBBERT may assert a claim for set off against any amounts paid under the secured Note in connection with any lawsuit filed by GCS against him for any of the claims that would have been released hereunder had the secured Note been fully paid. **In addition, even after full and final payment, GCS reserves any rights, causes of action or claims related to any future causes of action including those related to any breach of the Non-Compete Agreement or those related to any work at ATK which may be made against GCS related in any way to Mr. LUEBBERT and/or ATLAS INDUSTRIAL SOLUTIONS, LLC work.**

7.  MR. LUEBBERT agrees not to make any disparaging or negative comment regarding GCS or any GCS employee, officer, director or personnel and to keep confidential and not disclose the terms of this Settlement Agreement to any third parties with the exception of his attorney, accountant and immediate family.

8.  MR. LUEBBERT hereby agrees to secure the Promissory Note with a Security Agreement transferring all right, title and interest in the Purchase Order to GCS as collateral for the Promissory Note.

9.  MR. LUEBBERT hereby agrees that it has notified or covenants to notify appropriate ATK personnel, including the director, officer or person in charge of the personnel department at ATK, in writing, that MR. LUEBBERT retained GCS client files, including ATK project files after his resignation from GCS. MR. LUEBBERT agrees that GCS is not responsible for any claims, actions or liability related to MR. LUEBBERT'S retention activities.

10. MR. LUEBBERT executed a Non-Compete agreement prohibiting certain conduct upon the termination of his employment. **In exchange for granting MR. LUEBBERT temporary access to work at ATK under the Purchase Order, GCS is suspending the Non-Compete Agreement until the conclusion of the $96,000 Purchase Order at ATK, termination or other restriction prohibiting access at**

-3-

Add. 18

ATK, full payment under the Note or six months from the date of this Settlement Agreement, whichever is earlier. Upon the conclusion of the suspension, the Non-Compete Agreement will resume and remain in full force and effect for three years beginning on the date of the conclusion of the suspension. Additionally, upon the resumption of the Non-Compete Agreement, MR. LUEBBERT shall not have any contact with ATK, any personnel associated with ATK, GCS or any personnel at GCS for any purpose other than to remit payment under the Promissory Note or unless initiated by GCS. MR. LUEBBERT specifically acknowledges the validity and enforceability of the Non-Compete Agreement and agrees to fully abide by and not challenge or otherwise contest in any way the Non-Compete Agreement.

11. MR. LUEBBERT shall indemnify, defend and hold GCS harmless from and against any and all claims, causes of actions, costs, liabilities, losses and expenses, including, but not limited to attorney's fees resulting from or arising out of any claim, suit, action, arbitration or proceeding brought by any third party against GCS relating to:

    a.  a breach or alleged breach by MR. LUEBBERT, GCS or its agents, subcontractors or representatives or any of its representations, warranties, covenants or obligations related to the PURCHASE ORDER; or

    b.  personal injury caused to any party as a result of any negligence or willful misconduct of MR. LUEBBERT.

12. MR. LUEBBERT is (are) an independent contractor of ATK. Nothing in this Agreement shall be construed as creating an employer-employee relationship, as a guarantee of future employment or engagement. MR. LUEBBERT further agrees to be responsible for all of his federal and state taxes, withholding, social security, insurance, and other benefits and that no provision has been made by GCS for income tax withholding, or any employment-related taxes. MR. LUEBBERT shall be responsible for all federal, state, local or other taxes accruing to it for the performance of any services or payments received from ATK.

13. GCS will not provide any insurance covering any work performed by MR. LUEBBERT and he shall insure, self insure or cause to be insured, at no expense to GCS all work under the Purchase Order and related work completed and all equipment and materials delivered and stored at ATK and in transit which are to be used in the work or incorporated into the work at ATK, against the risks normally insured under an All Risk Insurance Policy (Broad Form). In addition, GCS shall not be responsible for providing insurance to protect tools and construction equipment used by MR. LUEBBERT or any subcontractors or contractors in the prosecution of the work. GCS shall be an additional insured under this policy and MR. LUEBBERT shall be responsible for payment of any applicable deductible amounts, except to the extent limited by law. MR. LUEBBERT shall deliver a copy of the Certificate of Insurance specified herein within thirty days of execution of this agreement.

-4-

Add. 19

14. MR. LUEBBERT shall obtain and maintain in full force and effect during the term of this Agreement, at its sole cost and expense, with insurance companies either having a Best's Rating of A-/IX or better or otherwise acceptable to ATK, the insurance described below, at levels no less than the minimums indicated nor less than the coverages normally maintained by other licensed professionals in the ordinary course of business for controls engineering and project management. A certificate of insurance evidencing such coverages shall be provided to GCS within thirty days of the execution of this Agreement or at the request of GCS:

    a.  Commercial general liability insurance written on an ISO form, applicable solely to Contractor's operations under this Agreement on an "occurrence basis" including the operations of subcontractors of any tier, including bodily injury, death, property damage, independent contractors, products/completed operations, contractual, and personal injury liability, with a limit of $1,000,000 each occurrence and $1,000,000 in the annual aggregate;

    b.  Umbrella excess liability coverage with a combined single limit of $1,000,000 on a following form basis; and

    c.  Errors and Omissions insurance with limits of not less than $1,000,000 per occurrence.

All such insurance policies carried by MR. LUEBBERT shall be endorsed to provide that all insureds and additional insureds hereunder shall be given thirty (30) days' advance written notice of cancellation, or non-renewal or material change and to contain a waiver of subrogation clause in favor of GCS.

15. GCS shall be named as additional insureds under each Insurance policy described above, and such coverages shall be primary to any insurance carried by GCS to the extent of MR. LUEBBERT indemnity obligations hereunder. All deductibles under MR. LUEBBERT insurance shall be paid by MR. LUEBBERT and shall not be reimbursable to MR. LUEBBERT under this Agreement.

16. The Parties acknowledge that for the purpose of enforcing the terms of this Settlement Agreement or entering judgment appropriate jurisdiction and venue shall lie with the Circuit Court of Jackson County, Missouri.

17. Each of the Parties represents and warrants that it has been represented by separate legal counsel of its own choice throughout all of the negotiations that preceded the execution of this Settlement Agreement and in connection with the preparation and execution of this Settlement Agreement; that it has carefully and thoroughly reviewed this Settlement Agreement in its entirety with that counsel; that its counsel has approved it as to form; and that it understands the terms used herein.

-5-

Add. 20

18. Each party has had the opportunity to investigate this matter, determine the advisability of entering into this Settlement Agreement and has entered into this Settlement Agreement freely and voluntarily. Each of the Parties acknowledges that in executing this Settlement Agreement they rely solely on their own judgment, belief and knowledge and on such advice as they may have received from their own counsel and that they have not been influenced by any representation or statements made by the other party or its counsel. No provision in this Settlement Agreement is to be interpreted for or against any of the Parties because that Party or its counsel drafted such provision.

19. This Settlement Agreement and its Exhibits 1, 2, 3 and 4, embody the entire understanding and agreement of the Parties concerning the resolution of all disputes, claims or potential claims between them that arose during their working relationship and as such, it fully supersedes any other oral or written understandings, agreements, representations and warranties between them relating thereto.

20. The terms and conditions contained in this Settlement Agreement shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, survivors and personal representatives of each of the Parties.

21. The Parties, and each of them, agree to execute such other documents and take such other immediate action as may reasonably be necessary to accomplish the purpose of this Settlement Agreement

22. In the event that any condition, covenant or other provision of this Settlement Agreement is held to be invalid or void by any court of competent jurisdiction, it shall be deemed severable from the remainder of this Settlement Agreement and shall in no way affect any other condition, covenant or other provision of this Settlement Agreement. If such condition, covenant or other provision is held to be invalid due to its scope or breadth, it is agreed that it shall be deemed to remain valid to the extent permitted by law.

23. No breach of any provision of this Settlement Agreement shall be deemed waived unless it is waived in writing. Waiver of any one breach shall not be deemed a waiver of any other breach of the same or any other provision of this Settlement Agreement.

24. This Settlement Agreement can only be amended or modified by a written agreement duly executed by all of the Parties.

25. Any person or organization signing this Settlement Agreement represents and warrants that such execution is in compliance with any required resolution, duly adopted at a meeting. Any individual signing this Settlement Agreement on behalf of another individual, organization, corporation or a partnership represents and warrants that he or she has full authority to do so.

-6-

Add. 21

Case 4:14-cv-00657-DGK   Document 137-2   Filed 01/20/16   Page 6 of 8

Appellate Case: 19-2751     Page: 23     Date Filed: 10/18/2019 Entry ID: 4843463

26. This Settlement Agreement shall be governed by and construed and enforced under the laws of the State of Missouri.

27. In the event either party commences any action in a court of law to enforce this Settlement Agreement or obtain damages for the breach of this Settlement Agreement, the prevailing Party shall be entitled to an award of its actual attorneys' fees and costs incurred in such action.

28. This Settlement Agreement may be executed in counterparts, and each counterpart shall be considered an original. This Settlement Agreement shall not be effective in any way as to any of the Parties until fully executed by all parties and until counsel for each of the Parties has been delivered a fully executed counterpart thereof.

29. Nothing herein shall be construed or interpreted as an admission by any party hereto of liability to any other party hereto, all liability being expressly denied by all parties hereto.

ACKNOWLEDGED AND AGREED TO:

Derek Luebbert

By: _____

Address: _9_9_ Walnut St

Address: #1907

Tel: _73-690-2777

E-Mail: derek.luebbert@gmail.com

Atlas Industrial Solutions, LLC

By: _____

Address: 909 walnut St,

Address: #1907

Tel: 575-690-2777

E-Mail: derek.luebbert@gmail.com

-7-

By: Global Control Systems, Inc.

By: _____

Address: _____

Address: _____

Tel: _____

Fax: _____

E-Mail: _____

Case 4:14-cv-00657-DGK  Document 137-2  Filed 01/20/16  Page 8 of 8

Appellate Case: 19-2751    Page: 25    Date Filed: 10/18/2019 Entry ID: 4843463

Ex. 36
Release

# AMENDMENT

This AMENDMENT is entered into this 28 day of January, 2011, and amends the SETTLEMENT AND MUTUAL RELEASE (the "Settlement Agreement") entered between DEREK LUEBBERT ("LUEBBERT"), an individual residing at 38 Crede Lane, PO Box 314, Westphalia, MO 65085, ATLAS INDUSTRIAL SOLUTIONS, LLC, a Missouri Limited Liability Company ("ATLAS"), and GLOBAL CONTROL SYSTEMS, INC., a Kansas Corporation ("GCS") on the 17th day of June, 2010 (collectively referred to as "the Parties"). In consideration of the mutual promises and covenants contained herein, the parties hereby agree to amend the Settlement Agreement as follows:

1.      Except as otherwise set forth herein, the Settlement Agreement and all other agreements between the parties remain in full force and effect.

2.      LUEBBERT and ATLAS agree to pay to GCS fifty percent (50%) of all revenue, including travel expense markups, paid by Alliant Techsystems, Inc. ("ATK") to LUEBBERT and/or ATLAS for any alterations to the original purchase order, this Amendment is entered until LUEBBERT and ATLAS cease further work or other economically remunerative activities for ATK. Itemized travel expenses reimbursed to LUEBBERT by ATK will be reimbursed to LUEBBERT at the reimbursed actual cost amount, upon the presentation of a two-party check made payable to GCS and ATLAS and covering the itemized travel expenses along with the corresponding invoice submitted to ATK showing the itemized travel expenses. LUEBBERT and ATLAS shall require ATK to make all payments by two-party checks made payable to GCS and ATLAS.

3.      ATLAS and LUEBBERT agree to keep GCS informed regarding purchase orders, additional work requests, invoices or any other accounting related activities. ATLAS agrees to provide access to ATLAS accounting records for the purpose of inspecting or otherwise verifying accounting related activities.

4.      GCS agrees to permit LUEBBERT and ATLAS to work for and collect revenue from ATK pursuant to the terms of this Agreement; accordingly, this Amendment serves to extend the suspension of the Noncompete Agreement as provided in paragraph 10 of the Settlement Agreement (the "Extended Suspension") until the work by ATLAS or LEUBBERT at ATK has concluded.

5.      Upon conclusion of further work by LUEBBERT and ATLAS for ATK, LUEBBERT and ATLAS will notify GCS of same in writing via certified mail within ten (10) days of the conclusion of such work (the "Notice").

6.      Upon receipt of the Notice, the Extended Suspension will terminate, and LUEBBERT's obligations under the Noncompete Agreement will resume in their entirety and remain in full force and effect for a three year period beginning on the date of GCS's receipt of the Notice.

ACKNOWLEDGED and AGREED on the date set forth above:

Derek Luebbert

Atlas Industrial Soutions, LLC
By: Derek Luebbert

Global Control Systems, Inc.
By: Manuel David

Add. 24



EXHIBIT
37