No. 19-2751

*In the*

# United States Court of Appeals

*for the*

# Eighth Circuit

_____

**DEREK FRANCIS LUEBBERT,**

**Plaintiff-Appellant,**

**vs.**

**GLOBAL CONTROL SYSTEMS, INC.,**

**Defendant-Appellee**

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CASE NO. 18-0945-CV-W-BP**

_____

**PRINCIPAL BRIEF AND ADDENDUM
OF APPELLANT DEREK FRANCIS LUEBBERT**

_____

**Neil S. Sader, MO #34375**
**Michael J. Wambolt, Mo #51231**
**THE SADER LAW FIRM**
**2345 Grand, Suite 2150**
**Kansas City, MO 64108**
**Telephone (816) 595-1801**
**Facsimile (816) 561-0818**
**nsader@saderlawfirm.com**
**mwambolt@saderlawfirm.com**

**ATTORNEYS FOR APPELLANT**

1

## SUMMARY OF THE CASE
## AND REQUEST FOR ORAL ARGUMENT

This Appeal involves the dischargeability of judgment debt owed by Appellant Derek Francis Luebbert stemming from a breach of contract lawsuit.  Under 11 U.S. § 523(a)(6) of the U.S. Bankruptcy Code, a debtor may not discharge debt for willful and malicious injuries to another entity or its property.  The U.S. Bankruptcy Court for the Western District of Missouri declared Appellant's judgment nondischargeable and, on appeal, the U.S. District Court for the Western District of Missouri affirmed.  The District Court erred in applying collateral estoppel to the damages portion of the breach of contract judgment as Missouri law distinguishes contract damages from tortious injuries which renders collateral estoppel inapplicable to this case.

The District Court further erred in affirming the Bankruptcy Court's Memorandum Opinion declaring judgment debt owed by Appellant to be nondischargeable as both courts incorrectly determined Appellant's conduct amounted to conversion.  The record, and Missouri law do not support a finding that Appellant's actions rose to the level of conversion which is grounds for reversible error.

Appellant requests oral argument in the amount of fifteen minutes per side.

2

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant Derek Francis Luebbert does not have a parent corporation, and no publicly held corporation owns 10 percent or more of stock issued by Mr. Luebbert.

Appellate Case: 19-2751   Page: 3   Date Filed: 10/21/2019 Entry ID: 4843523

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND REQUEST
FOR ORAL ARGUMENT…………………………………………………..2

CORPORATE DISCLOSURE STATEMENT……………………..……..3

TABLE OF CONTENTS…………………………………………………4-5

TABLE OF AUTHORITIES………………………………………....6-9

JURISDICTIONAL STATEMENT…………………………………...…..10-11

STATEMENT OF THE ISSUES………………………..……………12-13

STANDARD OF APPELLATE REVIEW…………………….………..14

STATEMENT OF THE
CASE…………………………………………………...……15-25

SUMMARY OF THE ARGUMENT………………………..……25-27

ARGUMENT………………………………………………..…27-40

    I.    The District Court erred in applying collateral estoppel to
            establish that damages awarded in a breach of contract
            judgment satisfied the injury portion of Appellee's
            nondischargeability claim filed pursuant to 11 U.S.C.
            § 523 (a) the of the U.S. BankruptcCode……………………..27

            A.    The District Court's application of Collateral Estoppel
                 is a question of law that the Court reviews de novo…...27

            B.    Missouri state law applies to whether collateral estoppel
                 applies to the damages portion of Appellee's judgment
                 against Appellant…………………………..……27-30

            C.    Under Missouri law, simple breach of contract damages

Appellate Case: 19-2751    Page: 4    Date Filed: 10/21/2019 Entry ID: 4843523

are not evidence of tortious conduct in the absence of a fiduciary relationship……………………………..30-35

II.    The District Court erred in affirming the Bankruptcy Court's decision as the Bankruptcy Court failed to narrowly construe exceptions to discharge as required for claims brought pursuant to 11 U.S.C. § 523(a)(6) of the U.S. Bankruptcy Code………35

    A.    Standard of Review…………………………………35

    B.    Appellant's conduct was not tortious under Missouri Law…………………………………………………35-40

CONCLUSION……………………………………………………....…..41

CERTIFICATE OF COMPLIANCE……………………………………42

CERTIFICATE OF SERVICE……………………………………………..43

Appellate Case: 19-2751    Page: 5    Date Filed: 10/21/2019 Entry ID: 4843523

# TABLE OF AUTHORITIES

| Federal Cases | Page |
|---|---|

*Anderson v. City of Bessemer,*
470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)……........14

*B & B Hardware, Inc. v. Hargis Industries, Inc.,*
569 F.3d 383 (8th Cir. 2009)……………………………………...………14

*Blocker v. Patch (In re Patch),*
526 F.3d 1176 (8th Cir. 2008)…………………………………………………30

*Comprehensive Care Corp. v. RehabCare Corp.,*
98 F.3d 1063 (8th Cir. 1996)………………………………………………..33

*Econ. Dev. Growth Enters. Corp. v. McDermott, (In re McDermott),*
434 B.R. 271 (Bankr.N.D.N.Y. 2010)………………………………..……37

*Erickson v. Halverson,*
226 B.R. 22 (Bankr.D.Minn. 1998)…………………………………..……37

*Geiger v. Kawaauhau (In re Geiger),*
113 F.3d 848 (8th Cir. 1997)………………………………………………..36

*Glucona Am., Inc., v. Ardisson (In re Ardisson),*
272 B.R. 346 (Bankr.N.D.Ill. 2001)………………………………………..30

*In re Harmon,*
404 B.R. 521 (Bankr.W.D.Mo. 2009)………………………………....…36

*In re Iberg,*
395 B.R. 83 (Bankr.E.D.Ark. 2008)………………………………………..…37

*In re Jercich, (In re Jercich),*
238 F.3d 1202 (9th Cir. 2001)………………………………………………37

*Johnson v. Miera,*
926 F.2d 741 (8th Cir. 1991)………………………………………………..29

Appellate Case: 19-2751    Page: 6    Date Filed: 10/21/2019 Entry ID: 4843523

*Kingman v. Dillards, Inc.,*
721 F.3d 613 (8th Cir. 2013)……………………………………………….36

*Lockerby v. Sierra,*
535 F.3d 1038 (9th Cir. 2008)…………………………………………...30, 37

*Orr v. Marcella (In re Marcella),*
463 B.R. 212 (Bankr.D.Conn. 2011)………………………………………37

*Waugh v. Eldridge (In re Waugh),*
95 F.3d 706 (8th Cir. 1996)………………………………………….…..36-37

**Missouri Cases**

*American Bank of Spickard-Trenton v. Ireland (In re Ireland),*
49 B.R. 269 (Bankr.W.D.Mo. 1985)………………………...…….…..13, 40

*Breece v. Jeff,*
556 S.W.2d 696 (Mo.App. 1977)………………………………..……38

*Brown v. Carnahan,*
370 S.W.3d 637 (Mo. banc 2012)………………………………...12, 29

*Farmers and Merchants Ins. Co. v. Harris,*
814 S.W.2d 332 (Mo.App. 1991)………………………………………..31

*Freeman v. Leader Nat'l Ins. Co.,*
58 S.W.3d 590 (Mo.App.E.D. 2001)………………………………12, 32, 39

*Glenn v. Healthlink HMO, Inc.,*
360 S.W.3d 866 (Mo.App.E.D. 2012)………………………………….….32

*Kratky v. Musil,*
969 S.W.2d 371 (Mo.App.W.D. 1998)…………………………………32-33

*Koger v. Hartford Life Ins. Co.,*
28 S.W.3d 405 (Mo.App.W.D. 2000)………………………………………...31

*Mertz v. Blockbuster, Inc.,*
32 S.W.3d 130 (Mo.App.E.D. 2000)…………………………………12, 38

Appellate Case: 19-2751    Page: 7    Date Filed: 10/21/2019 Entry ID: 4843523

*Schell v. Lifemark Hosps. of Mo.,*
92 S.W.3d 222 (Mo.App.W.D. 2002)……………………………...13, 32, 39

*School Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Com'rs,*
384 S.W.3d 238 (Mo.App.W.D. 2012)……………………………………30

*Trimble v. Pracna,*
167 S.W.3d 706 (Mo. banc 2005)…………………………………...12, 31

*Zubres Radiology v. Providers Ins. Consultants,*
276 S.W.3d 335 (Mo.App.W.D. 2009)……………………………13, 32, 40

**Federal Statutes**

11 U.S.C. § 523(a)(2)(A)…………………………………………………..10

11 U.S.C. § 523(a)(6)………...2, 4-5, 10-12, 15-16, 25, 27-28, 30, 35-38, 40

28 U.S.C. § 157(a)…………………………………………………………10

28 U.S.C. § 157(b)(2)(I)……………………………………………………10

28 U.S.C. § 158(a)…………………………………………………………10

28 U.S.C. § 158(c)(1)(A)…………………………………………………..10

28 U.S.C. § 158(c)(1)(B)…………………………………………………...11

28 U.S.C. § 158(d)…………………………………………...………11

28 U.S.C. § 1291……………………………………………….....11

28 U.S.C. § 1334………………………………………………...……10

**Rules**

Fed. R. App. P. 32(a)(5)……………………………………...……..42

Appellate Case: 19-2751    Page: 8    Date Filed: 10/21/2019 Entry ID: 4843523

Fed. R. App. P. 32(a)(6)……………………………………………………42

Fed. R. App. P. 32(a)(7)(B)…………………………………………....42

Fed. R. App. P. 32(a)(7)(B)(iii)………………………………………..42

Fed. R. Bankr. P. 7001(6) …………………………….……………10

Appellate Case: 19-2751     Page: 9     Date Filed: 10/21/2019 Entry ID: 4843523

# JURISDICTIONAL STATEMENT

Appellant filed a Chapter 7 Bankruptcy case on September 21, 2016 with the U.S Bankruptcy Court for the Western District of Missouri ("the Bankruptcy Court"), Case No. 16-42612. On December 15, 2016, Appellee filed an Adversary Complaint with the Bankruptcy Court, Adversary No. 16-04165-can ("the Adversary"), that sought to exclude judgment debt owed by Appellant from discharge pursuant to 11 U.S.C. § 523(a)(6) and 523(a)(2)(A) though the latter claim was eventually dropped prior to trial. The Bankruptcy Court had jurisdiction over the Adversary action pursuant to 28 U.S.C. §§ 157(a) and 1334, and Fed. R. Bankr. P. 7001(6). In addition, Appellee's claims in the Adversary action were statutorily core proceedings under 28 U.S.C. § 157(b)(2)(I).

On November 15, 2018, the Bankruptcy Court entered a Memorandum Opinion and Judgment declaring judgment debt owed by Appellant for breach of contract to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Appellant timely appealed the Bankruptcy Court's decision November 29, 2018, when he filed a Notice of Appeal with the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). Appellant elected to have the appeal heard by the U.S. District Court for the Western District of Missouri ("the District Court") pursuant to 28 U.S.C. § 158(c)(1)(A). On

December 21, 2018, Appellee notified the Bankruptcy Court that it too elected to have the appeal heard in the District Court, therefore said court had jurisdiction over the matter pursuant to 28 U.S.C. § 158(c)(1)(B).

On July 15, 2019, the District Court entered an Order affirming the Bankruptcy Court's decision to deny Appellant a discharge of judgment debt owed to Appellee pursuant to 11 U.S.C. § 523(a)(6). On August 14, 2019, Appellant filed a Notice of Appeal to the Eighth Circuit Court of Appeals. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 158(d), and 1291 which grants the Court jurisdiction over final district court decisions.

Appellate Case: 19-2751     Page: 11     Date Filed: 10/21/2019 Entry ID: 4843523

## STATEMENT OF THE ISSUES

I.   DID THE DISTRICT COURT ERR IN APPLYING COLLATERAL ESTOPPEL TO ESTABLISH THAT DAMAGES AWARDED IN A BREACH OF CONTRACT JUDGMENT SATISFIED THE INJURY PORTION OF APPELLEE'S NONDISCHARGEABILITY CLAIM FILED  PURSUANT TO 11 U.S.C. § 523(a)(6) OF THE U.S. BANKRUPTCY CODE?

Apposite Statutes

- 11 U.S.C. § 523(a)(6).

Apposite Cases

- *Iowa Electric Light and Power Company v. Mobile Aerial Towers,* 723 F.2d 50 (8th Cir. 1983).

- *Brown v. Carnahan*, 370 S.W.3d 637 (Mo. banc 2012).

- Trimble v. Pracna, 167 S.W.3d 706 (Mo. banc 2005).

- *Freeman v. Leader Nat'l Ins. Co.,* 58 S.W.3d 590 (Mo.App.E.D. 2001).

II.  DID THE DISTRICT COURT ERR IN AFFIRMING THE BANKRUPTCY COURT'S DECISION AS THE BANKRUPTCY COURT FAILED TO NARROWLY CONSTRUE EXCEPTIONS TO DISCHARGE AS REQUIRED FOR CLAIMS BROUGHT PURSUANT TO 11 U.S.C. § 523(a)(6) OF THE U.S. BANKRUPTCY CODE?

Apposite Statutes

- 11 U.S.C. § 523(a)(6).

Apposite Cases

- *Mertz v. Blockbuster, Inc.,* 32 S.W.3d 130 (Mo.App.E.D. 2000).

Appellate Case: 19-2751   Page: 12   Date Filed: 10/21/2019 Entry ID: 4843523

- *Schell v. Lifemark Hosps. of Mo.,* 90 S.W.3d 222 (Mo.App.W.D. 2002).

- *American Bank of Spickard-Trenton v. Ireland (In re Ireland),* 49 B.R. 269 (Bankr.W.D.Mo. 1985).

- *Zubres Radiology v. Providers Ins. Consultants,* 276 S.W.3d 335 (Mo.App.W.D. 2009).

Appellate Case: 19-2751    Page: 13    Date Filed: 10/21/2019 Entry ID: 4843523

## STANDARD OF APPELLATE REVIEW

This Court reviews conclusions of law, such as the District Court's application of collateral estoppel de novo.  See e.g. *B & B Hardware, Inc. v. Hargis Industries, Inc.,* 569 F.3d 383 (8th Cir. 2009).  The Court further reviews findings of fact for clear error.  Under the clear error standard, a finding of fact is "clearly erroneous" where, despite evidence to support the finding, the reviewing court is left with a definite and firm conviction that a mistake has been committed.  *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Appellate Case: 19-2751     Page: 14     Date Filed: 10/21/2019 Entry ID: 4843523

## STATEMENT OF THE CASE

This appeal stems from an Adversary Action filed by GCS in Mr. Luebbert's Chapter 7 Bankruptcy case and addresses the issue of whether judgment debt stemming from a breach of contract case should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6) due to injuries caused by willful and malicious conduct.

On November 18, 2019, the Honorable Cynthia A. Norton, Chief Judge of the U.S. Bankruptcy Court for the Western District of Missouri (the Bankruptcy Court), issued a Memorandum Opinion (Appx. 623 – 650) and Judgment of Nondischargeability (Appx. pgs. 651-652) declaring Judgment debt owed by Mr. Luebbert to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6) of the U.S Bankruptcy Code. The Memorandum Opinion and Judgment were issued after the Bankruptcy Court conducted a two-day trial from July 26 – 27, 2018 (Appx. pgs. 283, 498) on GCS's First Amended Adversary Complaint, Case No. 16-04165-can (Appx., pg. 270 – 275). The Judgment Debt stemmed from a Breach of Contract action filed by GCS against Mr. Luebbert in the U.S. District Court for the Western District of Missouri, Case No. 4:14-CV-657-DGK (the District Court Case) (Appx. pgs. 239 – 259). The District Court Case resulted in a Jury Verdict against Mr. Luebbert and, as reflected in the Amended Judgment in a Civil Action

15

issued by the District Court, Mr. Luebbert was ordered to pay damages of $302,631.30 for breach of contract, and an additional $305,802.89 in attorney's fees (Appx. pg. 260).

Mr. Luebbert timely appealed the Bankruptcy Court's Memorandum Opinion to the U.S. District Court for the Western District of Missouri (Addendum pgs. 1 – 12). Mr. Luebbert requested that the District Court reverse the Bankruptcy Court's nondischargeability decision based on an error in applying collateral estoppel to the issue of whether Mr. Luebbert's actions caused GCS to suffer an injury for purposes of its nondischargeability claim (Addendum pgs. 1 – 12). Mr. Luebbert also requested that the District Court reverse the Bankruptcy Court's decision based on its failure to narrowly construe exceptions to discharge in Mr. Luebbert's favor (Addendum pgs. 1 – 12). Ultimately, the District Court affirmed the Bankruptcy Court's Memorandum Opinion declaring the judgment debt owed by Mr. Luebbert nondischargeable (Addendum pgs. 1 – 12). In doing so, the District Court held the Bankruptcy Court properly applied collateral estoppel to the issue of damages for GCS' 523(a)(6) nondischargeability claim, and that the Bankruptcy Court did not err in failing to narrowly construe exceptions to discharge in applying 523(a)(6) to

16

Mr. Luebbert's actions that led to the judgment debt owed to GCS. (Addendum pgs. 1 – 12).

The dispute between Mr. Luebbert and GCS started when Mr. Luebbert, at the time a GCS employee, set up his own company, Atlas Industrial Solutions (Atlas) (Appx. 207 – 208) and bid on a contract for work at ATK Lake City Ammunition (ATK), a client of GCS (Appx. 40 – 43). ATK is a federal contractor that manages the Lake City Ammunition Plant, where ammunition is manufactured for the U.S. Military (Appx. pg. 310, Lines 18 – 25). Mr. Luebbert first became acquainted with ATK and its employees while employed by GCS where he worked at the Lake City Ammunition Plant as a GCS employee from 2007 to 2009 (Appx. pg. 312, Lines 20 – 23). As his skills and experience increased Mr. Luebbert became GCS's point-man at ATK (Appx. pg. 313, Lines 13 – 15). Mr. Luebbert did not inform GCS that he had set up his own company or that he had bid on work at ATK (Appx. pg. 319, Lines 1 – 25, pg. 320, Lines 1 – 13). Mr. Luebbert formally quit working at GCS on May 26, 2010 via a resignation letter delivered to GCS's owner, Manuel David (Appx. pg. 206). Mr. Luebbert's letter did not indicate that he had set up his own company or that he had bid on work at ATK in breach the non-compete clause of his employment agreement with GCS (Appx. pgs. 206, 209 – 220). Mr.

17

Luebbert was also vague when asked by GCS' Manuel David what he planned to do after leaving GCS (Appx. pg. 319, Lines 3 – 7).    Mr. Luebbert's actions violated the terms of his employment agreement with GCS which included a non-compete clause (Appx. 209 – 220).

Unbeknownst to GCS, at the time Mr. Luebbert tendered his resignation letter, ATK had approved his bid to provide services to ATK through his own company, Atlas (Appx. pgs. 623 – 628).  The successful bid resulted in Purchase Order D37395 (D95) being issued to Atlas on May 26, 2010, and the total amount awarded to Atlas through D95 was $90,000.00 for Controls Engineering and Design Services and an additional $6,000.00 for travel expenses (Appx., pgs. 623 – 624).  When GCS learned that Mr. Luebbert would become a competitor and had been awarded the D95 purchase order, it retained legal counsel and a series negotiations ensued that led to the parties entering a Settlement Agreement and Mutual Release dated June 17, 2010 (Appx. pgs. 221-228).   Under the terms of the Settlement Agreement, GCS agreed to waive the non-compete clause of Mr. Luebbert's employment agreement so he could complete work on D95 at ATK (Appx. pgs. 221 – 228) and Mr. Luebbert agreed to pay the sum of $66,000.00 to GCS "to restore GCS to the approximately [sic] the same economic position with ATK it would have been in had the purchase order been issued to GCS

18

and MR. LUEBBERT remained a GCS employee. (Appx. pg. 221). Under the terms of the Settlement Agreement, Mr. Luebbert and GCS anticipated that Mr. Luebbert would complete work at ATK and tender payment of $66,000.00 to GCS within six-months of entering the agreement (Appx. pgs. 223 -224, ¶ 10). To ensure compliance with his payment obligations under the terms of the Settlement Agreement, then parties later agreed to a two-party check arrangement in an Amendment to the Settlement Agreement whereby ATK would issue checks made out to Atlas and GCS and forward them to Mr. Luebbert who would then endorse the checks on behalf of Atlas and forward same to GCS which would then cash the checks and remit a check to Mr. Luebbert for his 50% share of

the proceeds (Appx. pg. 459, Lines 12 – 17; Appx. pg. 638, bottom of first full paragraph).

Mr. Luebbert complied with the terms of the Settlement Agreement but trouble ensued when ATK started making alterations to D95 which resulted in the project taking much longer than the six-months originally contemplated by Mr. Luebbert and GCS. ATK first made a request to extend D95 in November 2010, six-months after it first issued D95 to Mr. Luebbert's company (Appx. pg. 638, bottom paragraph). The extension called for an additional $30,000.00 to be added to the contract (*Id*.). Mr.

19

Luebbert had anticipated the extension and had his attorney email GCS's attorney to inquire about revising the terms of the Settlement Agreement but GCS's attorney did not respond (Appx. pg. 638, bottom paragraph, pg. 639 top paragraph). Once ATK formally added $30,000.00 to D95, Mr. Luebbert's attorney followed up with GCS's attorney to discuss whether Mr. Luebbert would be permitted to perform additional work on D95 (Appx. pg. 639). Ultimately GCS agreed to approve the extra work on D95 but required Mr. Luebbert to enter an Amendment to Settlement Agreement (Appx. 229).

Paragraph 1 of the Amendment to Settlement Agreement made clear that "Except as otherwise set forth herein, the Settlement Agreement and all other agreements between the parties remain in full force and effect." (*Id*.). Under the terms of the Amendment Mr. Luebbert formally agreed to the two-party check arrangement and also agreed to share 50% of all revenue generated by the addition to D95 (*Id.*). As explained in Paragraph 2 of the Amendment, the 50% profit sharing and two-party check arrangement applied to any alterations to the original purchase order [D95] and, "this Amendment is entered until LUEBBERT and ATLAS cease further work or other economically remunerative activities for ATK." (*Id*.).

20

Though originally D95 was issued for $96,000.00 in work that would only take 6 months (Appx., pgs. 623 – 624), ATK eventually modified D95 approximately 13 times for an additional $515,000.00 worth of services to be provided by Mr. Luebbert which significantly extended the time it would take for him to complete the contract (Appx. pg. 329, Lines 4 – 20). Also, though the Settlement Agreement only contemplated Mr. Luebbert having to pay $66,000.00 to GCS to make it whole for Mr. Luebbert being awarded the D95 contract, the extensions of D95 resulted in Mr. Luebbert paying $252,000.00 to GCS (Appx., pg. 363, Lines 16 – 17).

Mr. Luebbert became dissatisfied with the extensions to D95 and his profit-sharing arrangement with GCS as he felt the arrangement had no end so on February 5, 2013, he contacted an employment law attorney, Walter Brown, to assess whether he had any options with respect to the Settlement Agreement and Amendment to same (Appx. pg. 481, Lines 1 – 20; pg. 504, Lines 6 – 23; pg. 506, Lines 3 – 6). Mr. Luebbert was also concerned that his fee-sharing arrangement with GCS created a conflict of interest and could be viewed by the government as being illegal as he was advising ATK on who it should retain for projects and awarding contracts accordingly, which potentially included GCS and its competitors, while also paying money to GCS for his work on D95 (Appx., pg. 505, Lines 13 – 20). Mr.

Appellate Case: 19-2751     Page: 21     Date Filed: 10/21/2019 Entry ID: 4843523

Luebbert was further concerned about his work on a new Purchase Order, D50949 (D49) in the amount of $7,750.00 that had been awarded to him by ATK in mid-November 2012 and the effect of same on his obligations under the terms of the Settlement Agreement and Amendment to same (Appx. pg. 640, third paragraph). Also, Mr. Luebbert wanted to quit working on ATK projects but felt compelled to continue working on same as he had become vital to a green ammo project ATK was working on for the U.S. government and ATK did not have a replacement as qualified and capable as Mr. Luebbert (Appx., pg. 558, Lines 17 – 25; pg.559, Lines 1 – 14).

During the adversary trial, attorney Walter Brown testified that he had practiced law for about 20 years since graduating from law school in 1998 (Appx., pg. 3, Lines 7 – 9). Mr. Brown further testified that he primarily practices in the area of employment law litigation, and was partner in a national firm (*Id*. at Lines 23 – 25). Mr. Brown was formally retained by Mr. Luebbert (Appx. pg. 502, Lines 6 -7), and testified that he reviewed the settlement agreements, Mr. Luebbert's old non-compete agreement, and correspondence between Mr. Luebbert and GCS's Manual David (Appx. pg. 506, Lines 14 – 21; pg. 511, Lines 11 – 17; 512, Lines 19 – 25). After reviewing the documents provided by Mr. Luebbert, Mr. Brown was of the opinion that the settlement agreement was intended to catch GCS up on lost

Appellate Case: 19-2751      Page: 22      Date Filed: 10/21/2019 Entry ID: 4843523

revenue and that Mr. Luebbert's performance under the agreement had accomplished that goal (*Id*. at Lines 21 – 23). "Based on the documents that I saw, the contemplation was that this project would have an end date or an end time, and once that was done, they'd figure something else out or people would go their separate ways." (Appx. pg. 506, Lines 24 – 25; pg. 507, Lines 1 – 2).

Mr. Brown was also of the opinion that Mr. Luebbert had complied with the terms of the non-compete clause in his employment agreement with GCS as he had already abided by same for 2 ½ years following his resignation from GCS (Appx., pg. 506, Lines 11 – 14). Moreover, Mr. Brown was of the opinion that the non-compete clause was not enforceable under Missouri law as it had no apparent end in sight in that his original employment agreement only called for a 3 year non-compete period, but, by suspending the non-compete period in the settlement agreements, the non-compete would go on indefinitely as long as Mr. Luebbert worked at ATK "And that would be unreasonable under any measure or any interpretation of the law that I've ever seen." (Appx., pg. 513, Lines 21 – 25, and pg. 514, Lines 1 – 17).

With respect to non-D95 purchase orders, Mr. Brown was of the opinion that Mr. Luebbert did not have to share profits earned from said

Appellate Case: 19-2751    Page: 23    Date Filed: 10/21/2019 Entry ID: 4843523

purchase orders because the terms of the Settlement Agreement and Amendment only reference D95 (Appx., pg. 535, Lines 12 – 19; pg. 536, Lines 1 – 25). Based on Mr. Luebbert's desire to terminate his obligations under the terms of the settlement agreements with GCS, coupled with a review of documents provided by Mr. Luebbert concerning said settlement agreements and his work at ATK, Mr. Brown advised Mr. Luebbert to continue receiving two-party checks on D95 until work on said purchase order was completed, and for Mr. Luebbert to explain to GCS's Manuel David, in writing, that his arrangement under the terms of the settlement agreements had become untenable and that Mr. Luebbert intended to terminate same (Appx., pg. 539, Lines 8 – 20).

Acting on Mr. Brown's advice, Mr. Luebbert emailed GCS's Manuel David on April 5, 2013 (Appx. pg. 630). Among other things, the email informed Mr. David that Mr. Luebbert deemed his obligations to GCS fulfilled and that he was hopeful the parties could agree on terms for a new working relationship moving forward (*Id*.). The email also proposed a change from the 50-50 split of profits from Mr. Luebbert's work at ATK to a 90-10 arrangement and an alternative to the two-party check arrangement (*Id*.). Mr. Luebbert's email closed by stating:

"Unless a mutually beneficial and practical arrangement can be established from a professional compromise I will no longer be working at ATK under the current arrangement.  Going forward I will continue to support ATK as need and ability agrees but will have no relationship with GCS."  (*Id.*). Ultimately a new arrangement was not reached between the parties and GCS filed suit against Mr. Luebbert after learning of the other purchase orders and Mr. Luebbert's receipt of payment for same (Appx. pgs. 239 – 256).  As noted above, a jury awarded a judgment in GCS' favor for Breach of Contract and awarded damages of $302,631.30 and an additional $305,802.89 in attorney's fees against Mr. Luebbert (Appx. pg. 260).  As will be demonstrated below, the record reflects that GCS's damages do not stem from tortious conduct under Missouri law which is a critical component of its nondischargeability claim under 523(a)(6).

## SUMMARY OF THE ARGUMENT

The District Court erred in applying collateral estoppel to determine that the damages portion of a breach of contract judgment against Mr. Luebbert satisfied the "injury" element of GCS's nondischargeability claim. The breach of contract damages were awarded in a federal diversity action and the issue of whether collateral estoppel should apply to same is governed by Missouri law.  Missouri law distinguishes between ordinary

25

contract damages, and an injury arising from tortious conduct. Under limited circumstances, which do not arise in this case, tortious injuries may arise from a breach of contract action under Missouri if there exists a fiduciary relationship between the parties. Based on the inapplicability of collateral estoppel to the judgment debt owed by Mr. Luebbert, the District Court erred in applying same to affirm the Bankruptcy Court's order of nondischargeability.

In addition, the District Court erred in affirming the Bankruptcy Court's nondischargeability opinion in that the facts of this case do not support an inference that Mr. Luebbert engaged in tortious conduct amounting to a conversion. Under Missouri law, the only tortious conduct that could have arisen from Mr. Luebbert's contractual obligations would involve a scenario where a fiduciary relationship existed with GCS and Mr. Luebbert exercised domination and influence over GCS. A review of the terms of the Settlement Agreement and Amendment to same between the parties reveals Mr. Luebbert did not exercise domination or influence over GCS which prevents the contractual relationship from elevating to that of a fiduciary relationship. In the absence of a fiduciary relationship, tortious conduct will not arise from a party's breach of contract in Missouri, even if the party acts in bad faith. Under the circumstances, the District Court erred

26

in finding Mr. Luebbert's judgment debt was nondischargeable pursuant to

11 U.S.C. § 523(a)(6).

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN APPLYING COLLATERAL ESTOPPEL TO ESTABLISH THAT DAMAGES AWARDED IN A BREACH OF CONTRACT JUDGMENT SATISFIED THE INJURY PORTION OF APPELLEE'S NONDISCHARGEABILITY CLAIM FILED PURSUANT TO 11 U.S.C. § 523(a)(6) OF THE U.S. BANKRUPTCY CODE.**

### A. Standard of Review.

The District Court's application of Collateral Estoppel is subject to de novo review. *Manion v. Nagin,* 392 F.3d 294 (8th Cir. 2004). Collateral Estoppel applies to nondischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991).

### B. Missouri's standard of Collateral Estoppel applies in this appeal.

Ordinarily, federal common law governs the claim preclusive effect of federal court judgments. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507 – 8, 121 S.Ct. 1021, 1027 – 28, 149 L.Ed.2 32 (2001). That said, in federal diversity cases, the prevailing rule is that the law of the state where the federal diversity court sits governs the application of collateral estoppel. See e.g. *Iowa Electric Light and Power Company v. Mobile Aerial Towers,* 723 F.2d 50, 52 (8th Cir. 1983) (holding the collateral estoppel

27

effect of a prior judgment or order in a federal diversity action is a question of substantive law controlled by state common law); see also *Follette v. Wal-Mart Stores, Inc.*, 41 F.3d 1234, 1237 (8th Cir. 1994) ("This Court has consistently looked to state law to determine the effect of the judgment of another federal court in a case where state law supplied the rule of the decision. This rule applies where the original judgment is that of another federal court sitting in diversity.").

In this case, the District Court upheld the Bankruptcy Court's application of collateral estoppel to establish that judgment debt stemming from a breach of contract judgment equated to an injury for purposes of 11 U.S.C. § 523(a)(6). (Addendum pgs. 1 – 13, Appx. pgs. 651 – 652). Collateral estoppel does not apply to this case as breach of contract damages are separate and distinct from the tortious injuries required to satisfy a nondischargeability claim under 523(a)(6). The record reveals the judgment debt owed by Appellant stems from a federal court judgment sitting in diversity ("the Judgment"). (Addendum, pgs. 13 – 15). The Judgment was issued by the United States District Court for the Western District of Missouri after Appellee's state court claims were removed from the Circuit Court of Jackson County, Missouri. (Addendum pg. 14). The Judgment obtained by GCS against Mr. Luebbert followed a civil jury trial and

Appellate Case: 19-2751    Page: 28    Date Filed: 10/21/2019 Entry ID: 4843523

resulted in a jury verdict for breach of contract. (Addendum pg. 14). Based on the foregoing, Missouri law governs the applicability of collateral estoppel to Appellee's judgment.

Under Missouri law, collateral estoppel has the following elements: (1) the issue in the present case is identical to an issue decided in the prior adjudication, (2) the court in the adjudication rendered a judgment on the merits, (3) the party against whom collateral estoppel is asserted is the same party or in privity with a party in the prior adjudication, and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Brown v. Carnahan,* 370 S.W.3d 637, 658 – 59 (Mo. banc 2012). The party asserting collateral estoppel has the burden of establishing that each of the four factors are satisfied. *Johnson v. ,* 926 F.2d 741, 743 (8th Cir. 1991).

In this case, both the Bankruptcy Court and the District Court erred in applying collateral estoppel as elements 1 and 4 of collateral estoppel cannot be met. The issues concerning Appellee's breach of contract claim were not the same as Appellee's nondischargeability claim, which in turn means Appellant did not have a full and fair opportunity to litigate said issues in the prior breach of contract action. Appellee's breach of contract claim was brought pursuant to Missouri law which required Appellee to meet the

29

following elements to secure its judgment: (1) the existence of an enforceable contract, (2) the presence of mutual obligations under the contract, (3) the failure to perform an obligation in the contract, and (4) damages. See e.g. *School Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Com'rs,* 384 S.W.3d 238 (Mo.App.W.D. 2012). (Addendum pgs. 13 – 15). In contrast, Appellee's nondischargeability claim contains the following three elements: (1) the debtor must have caused an injury, (2) debtor's actions must have been willful, and (3) debtor's actions must have been malicious. See e.g. *Glucona Am., Inc., v. Ardisson (In re Ardisson),* 272 B.R. 346, 356 (Bankr.N.D.Ill. 2001). Not only are the elements of the above actions different, but the issue concerning "damages" in a breach of contract action are significantly different from the issue of what constitutes an "injury" in a nondischargeability action. The distinction is crucial as analysis on whether a particular debt is nondischargeable under 523(a)(6) requires a two-step examination: first "what 'injury' the debt is 'for'" and second, "whether the debtor both willful[ly]' and 'malicious[ly]' caused that 'injury.'" *Lockerby v. Sierra,* 535 F.3d 1038, 1040-41 (9th Cir. 2008); see also *Blocker v. Patch (In re Patch),* 526 F.3d 1176, 1180 (8th Cir. 2008).

Appellate Case: 19-2751     Page: 30     Date Filed: 10/21/2019 Entry ID: 4843523

## C. Under Missouri law, a breach of contract judgment, without a finding of fiduciary duty, does not involve tortious conduct.

Under Missouri law, contract damages are not considered tort damages in the absence of certain factors and are confined to actual, consequential, and benefit of the bargain damages. See e.g. *Trimble v. Pracna,* 167 S.W.3d 706, 711 (Mo. banc 2005). To obtain an award of damages, a claimant must demonstrate the level of same with reasonable certainty which requires substantial evidence which has been defined as "that which a reasonable mind would accept as sufficient to support a particular conclusion, granting all reasonable inference[s] which can be drawn from it." *Farmers and Merchants Ins. Co., v. Harris*, 814 S.W.2d 332, 334 (Mo.App. 1991).

Even a breach of the implied duty of good faith in a contract is insufficient to elevate simple breach of contract damages to damages stemming from a tortious injury in the absence of an award of punitive damages. See e.g. *Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 412 (Mo.App.W.D. 2000) ("The implied duty of one party to cooperate with the other party to a contract to enable performance and achievement of the expected benefits is an enforceable contract right [and] [b]reach of the implied duty of good faith and fair dealing is a contract action."). Contract actions based on breach of the implied duty of good faith are meant to

31

"prevent opportunistic behavior where one party exploits changing economic conditions to the detriment of the other party."  *Glenn v. Healthlink HMO, Inc.,* 360 S.W.3d 866, 877 (Mo.App.E.D. 2012).  That said, Missouri courts have made clear that "[t]he covenant of good faith and fair dealing is not an overflowing cornucopia of wished-for legal duties." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo.App.W.D. 2009).  The above cases demonstrate that under Missouri law, a judgment for breach of contract damages does not equate to liability for tortious conduct, even where one party exploits another party for economic advantage.

Factors that would provide evidence of tortious conduct in a breach of contract action are found in an award of punitive damages.  Under Missouri law, punitive damages do not flow from a breach of contract, rather they flow from a separate, independent tort.  See e.g. *Schell v. Lifemark Hosps. of Mo.,* 92 S.W.3d 222, 230 n.6 (Mo.App.W.D. 2002).  In Missouri, the separate and independent tort flows from establishing that the business relationship has morphed into a fiduciary relationship.  *Freeman v. Leader Nat'l Ins. Co.,* 58 S.W.3d 590, 598 (Mo.App.E.D. 2001).  "However, the existence of a business relationship does not give rise to a fiduciary relationship, nor [to] a presumption of such a relationship."  *Kratky v. Musil,*

969 S.W.2d 371, 377 (Mo.App.W.D. 1998). Also, [t]he implied covenant of good faith and fair dealing 'does not transform a business relationship into a fiduciary relationship.'" *Comprehensive Care Corp. v. RehabCare Corp.,* 98 F.3d 1063, 1066 (8th Cir. 1996). Instances where a fiduciary relationship is present are typically found in insurer-insured liability insurance contracts where "a special confidence is reposed on one side and there is a resulting domination and influence on the other." *Kratky,* 969 S.W.2d at 377 n.1. (noting that the terms of insurance contracts often dictate that the insurer retains the absolute authority to evaluate and settle third-party claim against the insured, which renders the insured subservient to the dominance of the insurer). The breach of contract judgment against Mr. Luebbert does not include an award of punitive damages. (Addendum pgs. 13 – 15). Had Mr. Luebbert engaged in tortious conduct, it was GCS's burden to plead and prove same in the breach of contract lawsuit. Instead, GCS opted to only pursue a breach of contract claim against Mr. Luebbert at trial. GCS is bound by that decision and the resulting judgment in its favor that solely limits its recovery to damages based on breach of contract which, under Missouri law, are distinct from an award for tortious injuries. (Addendum pgs. 13 – 15).

Appellate Case: 19-2751     Page: 33     Date Filed: 10/21/2019 Entry ID: 4843523

Moreover, a review of the terms of the Settlement Agreement and the Amendment to same that Appellant entered with Appellee establish that it was Appellee that had domination and influence over Appellant. In particular, under the terms of the Settlement Agreement, Appellant was terminated as an employee of Appellee and was instead designated as an independent contractor [Addendum pg. 16 ¶¶ 2, pg. 19, ¶12]; he was required to pay Appellee $66,000.00 earned through his work at ATK on purchase order D95 with $96,000.00 of awarded work remaining [Addendum pg. 16 ¶¶ 2, 5]; he was further barred from making disparaging remarks about Appellee and its officers and employees [Addendum pg. 18 ¶ 7]; he would continue to be bound by a noncompete agreement upon completion of work on D95 [Addendum pgs. 18-19 ¶ 10]; he was solely responsible for all taxes accruing from his work on D95 [Addendum pg. 19 ¶ 12]; and he was further required to obtain insurance for work on D95, at his sole cost and expense, at an insurance company with a rating of A-IX or better or otherwise acceptable to Appellee with at least $1,000,000.00 in occurrence coverage, umbrella coverage, and errors and omissions coverage with a further requirement that the insurance policy include Appellee as an additional insured [Addendum pgs. 19-20 ¶¶ 13 - 14].

Appellate Case: 19-2751    Page: 34    Date Filed: 10/21/2019 Entry ID: 4843523

The terms of the Amendment to the Settlement Agreement further extended Appellee's domination and control over Appellant as it incorporated the terms of the Settlement Agreement [Addendum pg. 24], it required Appellant to pay 50% of all revenue generated from his work on D95 via two party checks [Addendum pg. 24 ¶ 2], and it made clear that, upon termination of his work at ATK, he would remain bound by a prior noncompete agreement he entered with Appellee [Addendum pg. 24 ¶¶ 4 – 6]. The above terms demonstrate a fiduciary relationship did not exist between Appellant and Appellee. Appellant could not bind Appellee, he was not Appellee's employee, and no special trust was placed in him under the agreements. Instead, he either complied with the terms of the agreements, including the primary requirement that he turn over a portion of proceeds earned solely from his work at ATK, or he faced liability for breaching same. Based on the foregoing, the District Court erred in applying collateral estoppel to the issue of whether damages for breach of contract were sufficient to establish the existence of an injury for purposes of a nondischargeability claim filed pursuant to 11 U.S.C. § 523(a)(6).

## II. THE DISTRICT COURT ERRED IN AFFIRMING THE BANKRUPTCY COURT'S DECISION AS THE BANKRUPTCY COURT FAILED TO NARROWLY CONSTRUE EXCEPTIONS TO DISCHARGE AS REQUIRED FOR CLAIMS BROUGHT PURSUANT TO 11 U.S.C. § 523(a)(6) OF THE U.S. BANKRUPTCY CODE.

Appellate Case: 19-2751     Page: 35     Date Filed: 10/21/2019 Entry ID: 4843523

### A. Standard of Review.

Bankruptcy court determinations of whether a party acts willfully and maliciously for nondischargeability purposes involves a determination of intent, which is a question of fact. *Waugh v. Eldridge (In re Waugh),* 95 F.3d 706, 710 (8th Cir. 1996). Under the clearly erroneous standard, a court errs if its factual findings are not supported by substantial evidence in the record, if the findings are based on an erroneous view of the law, or if the reviewing court is left with the definite and firm conviction that an error was made. *Kingman v. Dillard's, Inc.,* 721 F.3d 613, 616 (8th Cir. 2013).

### B. Appellant's conduct was not tortious under Missouri Law.

Here, the District Court erred in affirming the Bankruptcy Court's determination that judgment debt owed by Mr. Luebbert was nondischargeable under 523(a)(6) for injuries caused by willful and malicious conduct. (Addendum pgs. 1 – 12). The term "willful" under 523(a)(6) requires an intent to injure and is based on headstrong and knowing conduct stemming from conduct akin to an intentional tort. *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir. 1997); *In re Harmon,* 404 B.R. 521 (Bankr.W.D.Mo. 2009). "Malice" under 523(a)(6) requires a showing that debtor intended to harm creditor in the sense that debtor's tortious conduct was certain, or almost certain to cause harm.

36

*Waugh,* 95 F.3d at 711. "Malicious for purposes of 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act." *Erickson v. Halverson,* 226 B.R. 22 at 26 (Bankr.D.Minn. 1998). "Malice requires conduct more culpable than that which is reckless disregard of the creditor's economic interest and expectancies…A debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravating circumstances." *Econ. Dev. Growth Enters. Corp. v. McDermott (In re McDermott),* 434 B.R. 271, 283 (Bankr.N.D.N.Y. 2010). "A breach of contract…without conduct akin to an intentional tort, is not sufficient to render a debt nondischargeable." *Orr v. Marcella (In re Marcella),* 463 B.R. 212, 220 (Bankr.D.Conn. 2011). Consequently, reviewing courts must consider whether a debtor's conduct is tortious on the one hand, and both willful and malicious on the other. See e.g. *In re Jercich,(In re Jercich),* 238 F.3d 1202, 1205-06 (9th Cir. 2001). Also, state law governs whether a debtor's conduct is tortious under 523(a)(6). *In re Iberg,* 395 B.R. 83 at 90 (Bankr.E.D.Ark. 2008) (citing *Lockerby v. Sierra,* 535 F.3d 1038, 1040 (9th Cir. 2008)).

Here, the District Court's opinion highlighted, via bullet points, a number of factors that, in its estimation, weighed in favor of the Bankruptcy

37

Court's determination that Mr. Luebbert's conduct was willful and malicious. (Addendum pgs. 10 – 11). The District Court then noted, approvingly, that the Bankruptcy Court likened Mr. Luebbert's conduct to the tort of conversion through his efforts to, primarily, order a stop of two-party checks from ATK which where required under the terms of an Amendment to the parties' Settlement Agreement to ensure that Appellee received 50% of all revenue generated by Mr. Luebbert's work at ATK. (Addendum pgs. 22 – 30).

A review of Missouri law reveals both the Bankruptcy Court and the District Court erred in relying on the tort of conversion as evidence of Mr. Luebbert's alleged tortious conduct for purposes of 523(a)(6) analysis. A tort claim will not lie under Missouri law in the absence of evidence that one party has taken unauthorized possession over the personal property of another. See e.g. *Mertz v. Blockbuster, Inc.,* 32 S.W.3d 130, 133 (Mo.App.E.D. 2000); see also *Breece v. Jeff*, 556 S.W.2d 696 (Mo.App. 1977) (a conversion claim involving money lies where said money can be identified as specific chattel). The evidence of conversion relied on by the District Court stemmed from Mr. Luebbert withholding GCS' share of payments he received from ATK. (Addendum pg. 11). Though his actions may have been in bad faith, they did not rise to the level of conversion as the

38

funds were not GCS' personal property. Instead, they were derived from earnings Mr. Luebbert received from ATK that he agreed to turn over to GCS under the Settlement Agreement and Amendment to same to settle a dispute with GCS. (Addendum pgs. 22 – 30).

In addition, GCS' judgment stems from a breach of contract action which limits the type of tortious conduct to that which may stem from a party's breach of contract under Missouri law. As noted above, the type of tortious conduct that may arise from a breach of contract action and further justify an award of punitive damages in same, flows from a scenario where the parties relationship has transformed into a fiduciary relationship and one party exercises domination and influence over the other. *Schell v. Lifemark Hosps. of Mo.,* 92 S.W.3d 222, 230 (Mo.App.W.D. 2002); *Freeman v. Leader Nat'l Ins. Co.,* 58 S.W.3d 590, 598 (Mo.App.E.D. 2001). The existence of a fiduciary relationship is not presumed and, as noted above, the onerous terms of the Settlement Agreement and Amendment to same establish that it was Appellee that exercised domination and influence over Appellant. (Addendum pgs. 22 – 30).

Exceptions to discharge are strictly construed in a debtor's favor as the denial of same is a harsh and drastic penalty that prevents debtor from obtaining a fresh start under the Bankruptcy Code. *American Bank of*

Appellate Case: 19-2751    Page: 39    Date Filed: 10/21/2019 Entry ID: 4843523

*Spickard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n.1

(Bankr.W.D.Mo. 1985). Here, both the Bankruptcy Court and the District

Court failed to narrowly construe GCS' request for an exception in Mr.

Luebbert's favor as they relied on tortious conduct, to wit conversion, that is

not recognized under Missouri law as the type of tortious conduct that can

arise from a contractual relationship. As opined by the Bankruptcy Court,

this nondischargeability action "is an exceedingly close case…" (Appx. pg.

664). Had the Bankruptcy Court and the District Court applied Missouri tort

law correctly, it would not have been such a close case. Mr. Luebbert's

actions in breaching his settlement agreements with GCS may have appeared

to be in bad faith, yet they were not tortious which is fatal to GCS'

nondischargeability claim. As cited above, Missouri courts have made clear

that "[t]he covenant of good faith and fair dealing is not an overflowing

cornucopia of wished-for legal duties." *Zubres Radiology v. Providers Ins.*

*Consultants*, 276 S.W.3d 335, 340 (Mo.App.W.D. 2009). Based on the

foregoing, cause exists to reverse the District Court's Opinion and to further

vacate the Bankruptcy Court's Memorandum Opinion declaring judgment

debt owed to Appellee to be nondischargeable pursuant to 11 U.S.C. §

523(a)(6).

Appellate Case: 19-2751   Page: 40   Date Filed: 10/21/2019 Entry ID: 4843523

## CONCLUSION

WHEREFORE, for the foregoing reasons, Appellant requests that this Court reverse the District Court's Order affirming the Bankruptcy Court's Memorandum Opinion denying Appellant a discharge of judgment debt owed to Appellee pursuant to 11 U.S.C. § 523(a)(6).

Respectfully submitted,

THE SADER LAW FIRM

/s/ *Michael J. Wambolt*
Neil S. Sader, MO #34375
Michael J. Wambolt, MO #51231
2345 Grand Blvd., Ste. 2150
Kansas City, MO 64108
(816) 595-1801
(816) 561-0818 Facsimile
nsader@saderlawfirm.com
mwambolt@saderlawfirm.com

Attorneys for Appellant
Derek Francis Luebbert

41

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because:

[**X**] this brief contains 6,417 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font, or

☐ this brief has been prepared in a monospaced typeface using Microsoft Word 2010 with [ number of characters per inch] in Times New Roman font.

3.      This brief has been scanned for viruses on October 18, 2019 using Symantec Endpoint Protection software which found said brief to be virus free.

*/s/ Michael J. Wambolt*_____
Michael J. Wambolt

Appellant's Attorney

Dated: October 18, 2019_____

Appellate Case: 19-2751     Page: 42     Date Filed: 10/21/2019 Entry ID: 4843523

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that on October 21, 2019, I served copies of the foregoing on all participants in the case who are not registered CM/ECF users by mailing a copy of same, first-class, postage prepaid, to the address listed on the Court's docketing sheet.

I further certify that on October 21, 2019, I served paper copies of the foregoing by mailing a copy of same, first-class, postage prepaid, to the following:

Jonathan Sternberg
2323 Grand Blvd., Ste. 1100
Kansas City, MO 64108
jonathan@sternberg.com

/s/ Michael J. Wambolt____
Michael J. Wambolt

s:\bankruptcycurrent\client forms - active\luebbert, derek francis\appeal 8th circuit\appellant's brief final 2019.10.18.doc

43

Appellate Case: 19-2751    Page: 43    Date Filed: 10/21/2019 Entry ID: 4843523